56 CCPA

**Application of John V. HARRINGTON and Henning H. Borchers. Patent Appeal No. 8138.**

United States Court of Customs and Patent Appeals.
April 10, 1969.

See also Cust. & Pat.App., 392 F.2d 653.

James E. Bryan, Washington, D. C., for appellants.

Joseph Schimmel, Washington, D. C. (Joseph F. Nakamura, New York City, of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and ALMOND and BALDWIN, Judges.

ALMOND, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the rejection of all the claims remaining in appellants' application[1] entitled "Image Lacquer and Intensifier for Lithographic Plates."

The sole issue is whether appellants' claimed invention is obvious and hence unpatentable under 35 U.S.C. § 103.

The invention relates to a lacquer for application to a lithographic printing plate. The purposes for which the lacquer is used are described in the specification as follows:

> The emulsion lacquers of the present invention protect the image of such printing plates against undue wear and abrasion and, further, the lacquers protect the desensitized, hydrophilic, non-image areas of the plate from becoming hydrophobic, resulting in toning. The lacquers also render the image visible and simplify the post-treatment steps required to process a lithographic plate.

The lacquer is applied to the printing plate by being poured on and worked lightly across the surface of the plate with a suitable pad. Excess lacquer is wiped off and the plate is rubbed down dry after which the plate may be run on a press, or stored if desired. Appellants' lacquers are stable oil-in-water emulsions in which the internal or dispersed phase consists of a novolak resin dissolved in a suitable organic solvent and a dispersed colorant, and the external, or dispersing, phase consists of an aqueous solution of a hydrocolloid and a bactericide. With regard to the use of novolak resins, the specification states:

> In accordance with the present invention, another such class of resins which can be formulated into emulsion lacquers having excellent properties for use in lacquering lithographic plates is provided. These resins are made by the acid catalyzed condensation of formaldehyde with an excess of phenol and are known as novolaks.

Composition claim 1 and method claim 15 are reproduced as representative of the claims on appeal:

> 1. A colored emulsion lacquer composition for reinforcing the image on a lithographic printing plate, the dispersing phase comprising water and a soluble thickener, and the dispersed phase comprising a novolak resin and a volatile water-immiscible solvent.

> 15. A method for reinforcing the image on a lithographic printing plate comprising treating the image with a colored emulsion lacquer composition in which the dispersing phase comprises water and a soluble thickener, and the dispersed phase comprises a novolak resin and a volatile water-immiscible solvent.

Inasmuch as the patentability of the invention rests on the single issue of the

---

[1]. Serial No. 8,522 filed February 15, 1960.

use of novolak resins, we consider all the claims to stand or fall together.

The following references were relied on before the board:

| | | |
|---|---|---|
| Mossberg | 1,951,943 | March 20, 1934 |
| Misuraca | 2,258,956 | October 14, 1941 |
| Hall | 2,754,279 | July 10, 1956 |
| Hodgins et al. (Hodgins) | 2,865,873 | December 23, 1958 |

———◆———

In addition, the board's decision makes the following identification of a literature reference cited before them by appellants:

The Condensed Chemical Dictionary, Sixth Edition, apparently pages 814 and 876 (1962—description copied from the fifth edition—1956)

Although we shall refer to these references in more detail later, their teachings may be briefly summarized as follows.

Hall discloses a liquid composition applied to lithographic printing plates by a simple process of pouring on and wiping off the excess. The liquid is a two-phase emulsion comprising an aqueous phase and a nonaqueous phase. The aqueous phase includes water and a soluble thickener, such as gum arabic or sodium carboxymethyl cellulose. The nonaqueous phase comprises a resin dissolved in a volatile, water-immiscible solvent such as ethylene dichloride. As to the particular resin, Hall discloses:

The epoxy resins, as indicated by the foregoing examples, are well adapted for use in my novel lithographic plate developer emulsions. They are insoluble in water. They are soluble in suitable volatile organic solvents from which they may be recovered in the form of strong, tough films. They adhere firmly to the image portions of the plate to provide a surface which is desirably organophilic and ink-receptive without being soluble in, or otherwise objectionably affected by, the ink. The epoxy resin developed surface has excellent wear-resistance which is particularly important with lithographic plates having extremely thin image layers such as the diazo-resin-coated plates of the   *   *   * Jewett et al. invention.

*   *   * These various epoxy resins, including derivatives as just described, are preferred by me as components of my novel developer compositions, although other equivalent resins and resinous materials are not thereby to be considered as excluded.

Mossberg discloses a liquid composition for forming a hard and durable, ink-receptive printing surface on the image areas of an exposed lithographic plate. The composition includes a resin formed by condensation of phenol and formaldehyde with further disclosure that the condensation process may be "partially arrested or at least retarded (by terminating the boiling) while the combined ingredients are still fluid, and preferably in an early stage in the condensation process." The liquid, after application to the plate, is baked to harden and polymerize the coating.

Misuraca discloses a coating composition for application to a lithographic printing plate to protect the image areas against wear. In Example II there is shown the use of heat reactive phenol formaldehyde resin in butyl alcohol as the composition. Misuraca teaches that the composition should be baked onto the plate to cause polymerization into a hard film.

Hodgins relates to a lacquer emulsion for lithographic plates. The lacquer emulsion comprises a formulation of vinyl chloride-vinyl acetate copolymer which is made up in di-isobutyl ketone

and xylene and then blended with a pigment, surfactants and an aqueous solution containing gum arabic, phosphoric acid and a small amount of phenol.

The extract from the Condensed Chemical Dictionary indicates that the base-catalyzed condensation of phenol with formaldehyde goes through three more or less distinct stages designated A (resol), B (resitol) and C (resite). The A-stage resin is "thermoplastic and completely soluble in alcohol," and the B-stage resin "softens but does not melt on heating and swells without dissolving in alcohol." The fully cured C-stage resin is "thermosetting and completely insoluble in all solvents." The acid-catalyzed condensation of phenol with formaldehyde yields a thermoplastic product known as novolak which is described as follows:

Novolak and B-stage resins can be cured to the thermosetting form by the addition of formaldehyde and an alkaline catalyst or with hexamethylenetetramine * * *.

Claims 1–3, 5–6, 8, 15–17, 19–20 and 22 were rejected under 35 U.S.C. § 103 on Hall in view of either Mossberg or Misuraca. It was the examiner's position that Hall discloses the claimed composition apart from the use of novalak resins and that it would be obvious to use a novolak resin in Hall's composition in view of the teaching in Mossberg and Misuraca of using A or B stage phenol formaldehyde resins which are close to novolak resins.

Claims 7, 9, 10, 21, 23 and 24 were rejected under 35 U.S.C. § 103 on the same combination of references as above, further in view of Hodgins. The examiner, in his Answer, stated:

Like Hall and appellants, Hodgins et al disclose lacquer emulsions for developing and reinforcing the images on lithographic printing plates. The emulsions of this reference include phenol, commonly used as a "bactericide" or preservative for gum arabic and similar hydrocolloids, and an ali-

phatic ketone, di-isobutyl ketone as a solvent for the vinyl resin. Thus, the Hodgins et al patent teaches that the materials required by these six claims are conventional in the art. Modifying the teachings of the references previously discussed in the manner taught by Hodgins et al is thought to be obvious.

The board considered the Misuraca and Mossberg references to teach the use, in a lithographic lacquer, of phenol-formaldehyde condensation products comprising A or B stage resins. In addition, the board characterized novolak resins as "apparent substitutes" for A or B stage phenol-formaldehyde resins. In affirming the examiner the board stated:

Since Hall discloses a composition which is to replace known developing inks we consider it to be obvious to one skilled in this art to apply the Hall emulsion procedure to compositions wherein the "equivalent resins" * * * are phenol-formaldehyde resins, such as the A or B stage taught in Mossberg, or apparent substitutes, the novolak resins herein claimed.

The board also affirmed the rejection of the second group of claims further in view of Hodgins, but did not discuss the application of the Hodgins reference.

On reconsideration the board considered arguments by appellants that the resins of the references were thermosetting and should be distinguished from appellants' thermoplastic resins, but adhered to their original decision, stating:

Contrary to the implication in the arguments, the claims do not require a thermoplastic material although novolak resins may, in fact, be thermoplastics. No significance is indicated in this record as to the thermoplasticity of this resin component and, as we have stressed in our decision, the reference compositions do encompass resins which, while they may also be thermosetting under the proper conditions, are nevertheless thermoplastic

when incorporated in the environment relied upon to support the rejection.

Here appellants contend that the rejection is improper, arguing firstly that it would not be obvious to substitute the resin of Mossberg or Misuraca for the resin component in the composition of Hall and secondly that, in any event, the resins of Mossberg and Misuraca are not equivalent to appellants' novolak resins.

On their first point, appellants argue:

In an attempt to overcome the deficiencies of the primary Hall reference, the patents to Misuraca and Mossberg have been combined therewith. Initially, it should be noted that this combination of references is improper since there is nothing in the references to suggest that they can be combined to meet the recitations of the claims, In re Hortman, 46 CCPA 814, 264 F.2d 911, 121 USPQ 218. The composition disclosed in the patent to Hall bears no relationship whatsoever to the compositions of the Misuraca and Mossberg references and, accordingly, the references are from non-analogous arts.

Appellants' argument that the references are from nonanalogous arts because the compositions are different does not seem to us to be sound. It is indisputably clear that Hall, Misuraca and Mossberg all relate to the same broad area of functional subject matter, namely, treating compositions for lithographic printing plates, and, in our opinion, would all fall within the expected ambit of knowledge of one skilled in the lithographic art. Thus given the propriety of combining these references, the combination suggested by the examiner is clearly proper in view of the previously quoted teaching in Hall that "other equivalent resins and resinous materials are not thereby to be considered as excluded."

Appellants' second argument that, even given the combination of Hall with Mossberg or Misuraca, novolak resins are not substitutes for the resins of Misuraca and Mossberg, is two-pronged. On the one hand appellants argue there is nothing in either of those secondary references to establish that the phenol-formaldehyde resins of Mossberg or Misuraca are in the A or B stage of condensation as contended by the board, and on the other hand that even if they are, they are still not the equivalent of novolak resins.

That the board was correct in characterizing the resins of Mossberg and Misuraca as A or B stage phenol-formaldehyde resins, is adequately shown by the following extract from the solicitor's brief:

Moreover, as correctly pointed out by the Board * * *, it is quite apparent that the resins described by Misuraca and Mossberg are either A- or B-stage phenol-formaldehyde resins. The resin described by Mossberg is a "viscous varnish-like fluid" * * which Mossberg states * * * is a product obtained by arresting the condensation of phenol and formaldehyde at an early stage. As shown by the Condensed Chemical Dictionary (* * Sixth Edition, page 876, Fifth Edition, page 848), the resin obtained by arresting the base-catalyzed condensation of phenol and formaldehyde at an early stage is either an A- or a B-stage resin (resol or resitol). The resin described by Misuraca is a "heat reactive phenol-formaldehyde resin" soluble in, inter alia, butyl alcohol * * *. As shown by the Condensed Chemical Dictionary (* * * Sixth Edition, page 876, Fifth Edition, page 848), only the A-stage resin (resol) is soluble in alcohol. Thus, Misuraca and Mossberg clearly show that either an A- or a B-stage phenol-formaldehyde resin is an obvious equivalent resin which may be used in lieu of epoxy resins in Hall.

Appellants' argument that novolak resins are not the equivalent of the resins of Misuraca and Mossberg is based on a contention that novolaks are thermoplastic while the resins of the references are thermosetting. Although it must be conceded that the Mossberg and Misu-

raca resins *subsequent to baking* have become the stage C, thermoset, phenol-formaldehyde resin, *it is nonetheless* clear that at the time of their application to the plates they are in the A- or B-stage as previously discussed. Thus, if the Misuraca or Mossberg resins were substituted in the Hall invention which does not require a baking stage (like appellants' method), the resins would be in the A- or B-stage. However, A- or B-stage phenol-formaldehyde resins are thermoplastic (Condensed Chemical Dictionary, Sixth Edition, page 876) as are the closely related novolak resins. Thus, in the invention as practiced by appellants and in the invention of the primary reference, in both of which no resin-baking stage is included, the distinction between thermosetting and thermoplastic properties is of no account. We are not, therefore, persuaded that the board was incorrect in considering the novolak resins of appellants to be apparent substitutes for the A- or B-stage phenol-formaldehyde resins of the secondary references.

Having considered the various arguments advanced by appellants, we are of the opinion that the board did not commit reversible error; therefore, the decision is affirmed.

Affirmed.