land conveyed as stated in the warranty deed of 1943.

After hearing evidence pursuant to an action brought by the owners of Estate Lille Norge against Kean, Dench and the heirs of Emile, Jr., and Mary Mohler for an authoritative fixing of the dividing line between the estates,[2] the district court declared that (a) the fence line and the extension thereof to be the boundary line between Estate Lille Norge and Estate Mariendahl, and (b) the easterly boundary of the property conveyed to van Aller and Kean on November 27, 1943, to be the line on defendants' Exhibit J–1 which passes through point "A". See map at end of opinion in 389 F.2d 619.

After remand of this case to the district court, Kean was of the view that this Court had awarded him a new trial. The district court refused to hear any additional evidence, and make its findings on the record previously made. This Court did not grant a new trial. Nevertheless the district court, in its discretion, could have taken additional evidence. See Rule 54(b) of the F.R.C.P. Kean has not given any reasons why he is entitled to offer additional evidence. The district court did not abuse its discretion in refusing to reopen the trial of the case.

 Kean argued, as he did in the district court, that the easterly boundary line should be drawn so that the land areas resulting from the division would correspond proportionally more closely to the respective prior interest of each party in the entire estate. This might be a logical argument in the absence of persuasive evidence as to where the parties to the Partition Deed, who died prior to the action, intended the line to be drawn. However, there was substantial competent evidence to support the district court's finding. It is not clearly erroneous. Therefore we may not set it aside. See Rule 52(a) of the Federal Rules of Civil Procedure.

Finally, Kean complains of the district court's omission, at the time the judgment was entered, to appoint commissioners and "direct the commissioners to go upon the lands of the parties and establish and mark out upon the grounds, by proper marks and monuments, the boundary or dividing line as ascertained and determined by the court in its judgment." See § 374 of Title 28, 4A V.I.C.A. T. 28 § 374. Kean does not seriously dispute the fence line as being the boundary line between the western portion of Estate Mariendahl and Estate Lille Norge. The line found to be the dividing line between the eastern and western divisions of Estate Mariendahl is a straight line the direction of which is not in dispute. The fixing of proper marks or monuments along these lines will not require acts of judgment on the commissioners' part. Their function will be purely ministerial. On remand, the district court, of course, will appoint the commissioners without any direction from this Court.

Accordingly, the judgment of the district court of October 1, 1968, will be affirmed.

---

**UNITED STATES of America, Plaintiff-Appellant,**

v.

**The BOARD OF EDUCATION OF WEBSTER COUNTY, GEORGIA, et al., Defendants-Appellees.**

**No. 29769.**

United States Court of Appeals, Fifth Circuit.

July 7, 1970.

---

2. Such an action is permitted by sections 373 et seq. of Title 28 of the Virgin Islands Code, 4A V.I.C.A. T. 28 § 372 et seq.

**60**

William I. Schloth, U. S. Atty., Macon, Ga., Martin D. Buckley, Brian K. Landsberg, David L. Norman, David J. Gregory, Attys., Department of Justice, Civil Rights Div., Washington, D. C., Jerris Leonard, Asst. Atty. Gen., for appellant.

William E. Smith, Americus, Ga., for appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

In July, 1969 this court reversed the District Court's approval of a freedom of choice plan and remanded the case for further consideration in the light of supervening decisions of the Supreme Court and this court.[1] On remand the School Board and HEW were unable to agree on a proposed desegregation plan, so each filed a proposed plan. Following an evidentiary hearing on February 25, 1970 the District Court approved the Board plan without modification. The United States appeals.[2] We reverse.

There are two school campuses in this small and predominantly agricultural Georgia county, and no sizeable towns. Webster, historically the white school, is located in Preston, the county seat. Lowery, historically the Negro school, is located slightly more than two miles away. Each serves the entire county.

In 1969–70 the system served 654 students, 525 (80%) black, and 129 (20%) white. Freedom of choice was in effect. Five Negro students chose to attend Webster along with all the 129 white. No white student chose Lowery. No white student has ever attended Lowery. Approximately 98% of the students were transported to the two schools. There were 35 teachers, 11 white and 24 black. One Negro teacher was assigned to Webster and two white teachers to Lowery.

The School Board plan provides for assignment of Negro students in grades 1–7 to Webster so that Negroes will constitute 25% of the enrollment in those grades at that school. There were 62 white students at Webster in grades 1–7 in 1969–70. A 25% black ratio of that enrollment would be 15 or 16 Negro students, approximately 3% of the blacks

1. United States v. Bd. of Education of Crisp County, Georgia, et al., 417 F.2d 1071 (5th Cir. 1969).

2. This case is heard on the full record and briefs of the parties, pursuant to our local Rule 18.

in the system. Lowery would continue to operate with all-Negro enrollment in grades 1–7.

The method for assignment of other students is not clear. The Board plan does not specifically provide for freedom of· choice, but at hearing the District Court advised the Superintendent to proceed with the normal freedom of choice period until ordered otherwise. The Board's brief describes the plan as freedom of choice (other than those assigned, as above described). The plan provides for transfer from one campus to the other of any student requesting it. Whether this would or would not apply to the Negroes assigned to grades 1–7 at Webster is not stated.

At the high school level, there would be part-time desegregation of some students under a course-exchange program. All English courses would be integrated and taught at the white school, some science courses integrated and taught at the Negro school, with students transported from one school to the other (along with faculty members) by shuttle buses.

As for faculty, no additional full-time teaching cross-overs are provided for. Teachers involved in the high school exchange classes would follow the students and teach on a part-time basis. The counselor and curriculum director from the black school, both Negroes, would serve both schools.

There would be joint use of the only gymnasium, at the white school, but with a separate athletic program for each school. Transportation would remain substantially segregated, since each student would ride a bus whose destination would be the school he would attend.

■■ The Board plan does not to any substantial degree meet requirements for disestablishing a racially identifiable dual school system with respect to any one of the six elements of student assignment, facilities, staff, faculty, transportation and extracurricular activities. Dualism in student assignment is not re-

moved by a freedom of choice plan which simply perpetuates the dual system previously in effect. Green v. New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), Anthony v. Marshall County Board of Education, 409 F.2d 287 (5th Cir. 1969); United States v. Choctaw County Board of Education, 417 F.2d 838 (5th Cir. 1969). It cannot be seriously contended that in this instance freedom of choice achieves anything other than continuing the black school as black and the white school as white. In 1969–70 no white students chose Lowery, which was all-black. Five black students (less than 1% of the blacks in the system) chose Webster, where they made up less than 4% of its student body. Disestablishment of an otherwise segregated student assignment system is not achieved by the sole device of minimal part-time desegregation under a course-exchange program. Hilson v. Ouzts, 425 F.2d 219 (5th Cir., 1970); Bivins v. Bibb County, 424 F.2d 97 (5th Cir. 1970). Nor does assignment of a few Negro students to the white elementary grades do so. United States v. Choctaw County, *supra.* The Board plan does not comply with Green v. New Kent County, *supra*; Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S. Ct. 29, 24 L.Ed.2d 19 (1969); United States v. Hinds County School Board, 423 F.2d 1264 (5th Cir. 1969); Carter v. West Feliciana Parish School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970); Singleton v. Jackson Municipal Separate School District, 419 F. 2d 1211 (5th Cir., 1970).

■ The School Board plan not being acceptable, we must direct that the plan proposed by HEW be put into effect. It provides for closing the smaller school, Webster, and operating Lowery as one county-wide school for all students in the system. Its capacity, according to the Superintendent, is 740 students against 654 in the system. Obviously, Webster, with a much smaller capacity, cannot care for all the students.

We remand to the District Court which is directed to enter promptly its order approving the plan proposed by HEW and directing the Board to put it into effect immediately.

If -any party desires it may seek the alternative of pairing the Lowery and Webster campuses, or the alternative of dividing the county into two attendance zones on nonracial grounds with each school serving a zone for grades 1–12. But requests for such variations may not delay entry of the order putting the HEW plan into immediate effect. There must be unitary operation pending litigation.

The mandate shall issue forthwith. No stay will be granted pending petition for rehearing or for certiorari.

Reversed and remanded with directions.