NEWBURG AREA COUNCIL, INC., et al., Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF JEFFERSON COUNTY, KENTUCKY, et al., Defendants-Appellees.

John L. HAYCRAFT et al., Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF LOUISVILLE, KENTUCKY, et al., Defendants-Appellees.

Nos. 73–1403, 73–1408.

United States Court of Appeals, Sixth Circuit.

Dec. 11, 1974.
Certiorari Denied April 21, 1975.
See 95 S.Ct. 1658.

John G. O'Mara, Thomas L. Hogan, Louisville, Ky., Robert Sedler, Lexington, Ky., Thomas L. Hogan, Louisville, Ky., for plaintiffs-appellants in No. 73–1403.

John A. Fulton, William A. Blodgett, Jr., Will Fulton, E. Preston Young, J. Donald Dinning, James W. Stites, Jr., Stites, McElwain & Fowler, Louisville, Ky., for defendants-appellees in No. 73–1403.

Darryl T. Owens, Charles J. Lunderman, Jr., Louisville, Ky., Robert A. Sedler, Lexington, Ky., John G. O'Mara, Thomas Hogan, Louisville, Ky., for plaintiffs-appellants in No. 73–1408.

Henry A. Triplett, E. Preston Young, J. Donald Dinning, James W. Stites, Jr., John A. Fulton, William A. Blodgett, Jr., Louisville, Ky., for defendants-appellees in No. 73–1408.

Before PHILLIPS, Chief Judge, and McCREE and MILLER, Circuit Judges.

PER CURIAM.

These consolidated school desegregation cases were originally before this

Court in Newburg Area Council, Inc., et al., v. Board of Education of Jefferson County, Kentucky, et al., and John L. Haycraft et al. v. Board of Education of Louisville, Kentucky, et al., 489 F.2d 925 (6th Cir. 1973), in which it was held:

(1) That neither the Independent Louisville School District nor the Jefferson County School District was a unitary system, both operating dual school systems from which all vestiges of state-imposed segregation had not been eliminated; and (2) That all vestiges of state-imposed segregation must be eliminated within each school district in the county, state-created school district lines to impose no barrier in accomplishing such purpose.

The judgment of the district court, dismissing the action as to the Louisville and Jefferson County school districts, was reversed and the actions were remanded for further proceedings, with the statement that to accomplish the elimination of remaining vestiges of de jure segregation, "we do not require the use of any particular method nor approve in advance the use of any particular device."

The petitions of the defendant School Boards for certiorari were granted and on July 25, 1974, the Supreme Court entered the following order:

The petitions for writs of certiorari are granted. The judgments are vacated and the cases are remanded to the United States Court of Appeals for the Sixth Circuit for further consideration in light of Milliken v. Bradley, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974). Mr. Justice Douglas, Mr. Justice Brennan, Mr. Justice White and Mr. Justice Marshall would grant certiorari and without briefing or oral argument affirm the judgments.

By this Court's order of August 8, 1974, the parties were directed to file supplemental briefs addressed to all questions applicable to the reconsideration by this Court of its prior opinion and ruling of December 28, 1973. Thereafter, extensive briefs were filed by the parties and the actions were set down for hearing on oral argument on October 14, 1974.

After full reconsideration, pursuant to the order of remand of the Supreme Court and its ruling in Milliken as to inter-district remedies, we are of the opinion that our prior ruling was correct and that it should be and it is hereby reaffirmed.

At the outset, we construe the Supreme Court's opinion in Bradley v. Milliken, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069, 1974, and its order of remand in the present cases, as in no way requiring a reconsideration of our prior opinion insofar as it held that both the Louisville and Jefferson County school districts were operating dual school systems from which all vestiges of state-imposed segregation had not been eliminated as required by law.

Therefore, in this opinion, we address ourselves only to our prior holding that the district judge in approving or formulating a plan of desegregation for Jefferson County, Kentucky, would have the power to require that state-created school district lines could be disregarded. On this issue, we find that there are material and controlling distinctions between the facts of the present cases and the facts before the Supreme Court in Milliken, in which the court held that state-created district lines could not be disregarded in devising an appropriate desegregation plan for the City of Detroit only:

(1) A vital distinction between Milliken and the present cases is that in the former there was no evidence that the outlying school districts had committed acts of de jure segregation or that they were operating dual school systems. Exactly the opposite is true here since both the Louisville and Jefferson County School Districts have been expressly found by this Court to have failed to eliminate all vestiges of state-imposed segregation. Consequently, as contrasted with the outlying Michigan districts, they are guilty of maintaining dual school systems.

(2) In Milliken, the metropolitan remedy would have involved some 53 school

districts spreading over three counties, while the present cases involve only two and possibly three districts in a single county.[1] Hence, the inter-district remedy in this case would not be likely extensively to disrupt and alter the structure of public education in Kentucky, or even in Jefferson County, nor require the creation of a vast new super school district, as may have resulted from the broad metropolitan remedy considered in *Milliken.*

(3) In Kentucky, the county is established as the basic educational unit of the state [Ky.Rev.Stat. § 160.010], and the state legislature has referred to the boundaries of school districts as "artificially drawn school district lines." Ky. Rev.Stat. § 160.048(1). Statutes of this character were not in effect in Michigan and consequently were not considered by the Supreme Court in *Milliken.*

(4) In *Milliken,* the Supreme Court expressed some concern because of the serious administrative problems which could arise in Michigan if the Court should decree an inter-district remedy entailing the consolidation of a large number of separate school districts. In Kentucky, however, if the district court should find that a formal consolidation or merger of districts was required to effectuate an effective desegregation plan for the county as a whole, such administrative problems would to a large extent be obviated since the merger or consolidation in that state could be effectuated under the express provisions of a Kentucky statute. This statute authorizes the reconsolidation of school districts within a single county even without the consent of the county school board. Ky.Rev.Stat. § 160.041.

(5) A crucial difference between the present cases and *Milliken* is that school district lines in Kentucky have been ignored in the past for the purpose of aiding and implementing continued segregation. Such disregarding of school district lines continues to have an effect on racial imbalance in the county's schools, particularly in the location of Atherton High School in the county and away from the core city of Louisville. For example, in pre-*Brown* days black high school students in the Jefferson County school district were sent to the black Central High School located in the Louisville school district. This was done because the county had no black high school, and it was done on a tuition basis paid by the county. While this action by itself might be insufficient to invoke the equitable power of the court, *see* 418 U.S. 717, 94 S.Ct. 3112, there are other instances in the present case of disregarding school district lines. Atherton High School is an example. Atherton is a high school belonging to the Louisville school district, but it was and is located outside the boundaries of that district and within the territory of the Jefferson County school district. Students from both school districts have been permitted to attend the school. Further, while in *Milliken* only two of 52 potentially affected school districts were involved in crossing district lines, the present cases involve at least two of the three school districts, and by far the two largest districts, located in the geographical boundaries of Jefferson County. Thus, in the

---

1. The third district in the present cases is the Anchorage School District, a very small district operating only one elementary school and located in the southeast portion of Jefferson County. The plaintiffs in the *Haycraft* case sought to join this district and its superintendent as parties defendants. When the district court ruled in a pre-trial order that it did not have the power to cross school district lines, it dismissed the proceedings against the Anchorage District and its superintendent. Since no appeal was taken from this order, it was argued on behalf of the Anchorage School District that the court was without authority to direct the district judge to reinstate the case as to Anchorage. Nevertheless, we remain of the view that the district court in passing upon any plan for desegregating the schools of Jefferson County may, on its own motion, if deemed to be required, join any necessary party in order to accomplish complete relief. If, on remand, the district court should be of the opinion that the Anchorage School District should be made a party defendant, he may appropriately have the district so joined under conditions which will afford it a full opportunity to be heard with respect to any finding or order affecting its interests.

present cases the disregarding of school district lines in a single county in Kentucky cannot be characterized as a mere isolated instance, as was the case in *Milliken* with respect to the Carver-Detroit high school situation.

(6) The Louisville school district is an independent school district established in accordance with the requirements of Ky. Rev.Stat. § 160.020, which provides for independent school districts within a single county. It is located within the City of Louisville, but its boundaries are not coterminous with the political boundaries of that city since the boundaries of an independent school district in Kentucky do not expand with the boundaries of the city in which it is embraced. As pointed out in our prior opinion, approximately 10,000 children, mostly white, live between the outer boundaries of the Louisville school district and the boundaries of the City of Louisville. Such a large number of white students who are resident within the City of Louisville, but are required to attend county schools administered by the Jefferson County school district, materially aggravates the difficulties in disestablishing the dual city school system.

We conclude in view of these factors that the school district lines in Jefferson County, Kentucky, have been crossed for the purpose and with the actual effect of segregating school children among the public schools of the county on the basis of race.

We are not confronted here with the problem in *Milliken* in which the remedy approved by the Court of Appeals was broader than the constitutional violation. Rather, the situation presented is that of two districts in the same county of the state being equally guilty in failing to eliminate all vestiges of segregation mandated by the same Kentucky statute. Before its repeal sometime after the ruling in *Brown I*, Sec. 158.020 of the Ky. Rev. Statutes provided:

(1) Each board of education shall maintain separate schools for the white and colored children residing in its district.

(2) No person shall operate or maintain any college, school or institution where persons of both the white and colored races are received as pupils.

(3) No instructor shall teach in any college, school or institution where persons of both the white and colored races are received as pupils.

(4) No white person shall attend any college, school or institution where colored persons are received as pupils or receive instruction.

(5) No colored person shall attend any college, school or institution where white persons are received as pupils or receive instruction. * * *

In Wright v. Council of the City of Emporia, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972), and in United States v. Scotland Neck Board of Education, 407 U.S. 484, 92 S.Ct. 2214, 33 L.Ed.2d 75 (1972), the Supreme Court refused to permit the establishment of separate school districts within a single county, even though authorized by state law, where it was found that this would impede the process of dismantling a segregated school system. By analogy no justification appears for permitting the city and county school districts in Jefferson County to remain completely autonomous if the effect is to impede the process of desegregating the schools of the county as a whole.

Accordingly, after full reconsideration as directed by the Supreme Court, our opinion of December 28, 1973, is hereby reinstated with the modifications (1) that the district court shall join the Anchorage School District as a party defendant if deemed necessary to provide an adequate remedy; (2) that the effectiveness of any order entered by the district court on remand which may provide for an inter-district remedy shall be postponed until all appeals in connection with such order have been exhausted or, in the event no appeals are taken, until the time for such appeals has expired; and (3) that in no event shall any further plan of desegregation ordered by the district court take effect before the beginning of the 1975–76 academic year.