John E. HAYCRAFT et al.,
Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF JEFFER-
SON COUNTY, KENTUCKY, et al.,
Defendants-Appellees.

No. 77–3263.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1978.

Decided Oct. 20, 1978.

Thomas L. Hogan, Louisville, Ky., for plaintiffs-appellants.

John A. Fulton, Will H. Fulton, Woodward, Hobson & Fulton, Louisville, Ky., for defendants-appellees.

Before PHILLIPS, Chief Judge, ENGEL, Circuit Judge, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This case is the latest matter coming out of the Louisville school desegregation case. Plaintiffs-appellants bring this appeal from an order entered by the district court exempting first grade pupils from the busing plan "until such time as the kindergarten program is available on a system-wide basis or until further order of this [District] Court." We reverse.

I

In *Newburg Area Council v. Board of Education of Jefferson County, Kentucky,* 489 F.2d 925 (6th Cir. 1973), *vacated and remanded* in 418 U.S. 918, 94 S.Ct. 3208, 41 L.Ed.2d 1160 (1974), *for consideration in light of Milliken v. Bradley,* 418 U.S. 717, 94

S.Ct. 3112, 41 L.Ed.2d 1069 (1974) (*Milliken I*), *opinion reinstated,* 510 F.2d 1358 (6th Cir. 1974), *cert. denied,* 421 U.S. 931, 94 S.Ct. 1658, 44 L.Ed.2d 88 (1975), this Court determined that the dual school system that had existed in Jefferson County, Kentucky, had not been dismantled and directed the district court to eliminate "all vestiges of state-imposed segregation." 489 F.2d at 932. *See Newburg Area Council v. Board of Education of Jefferson County, Kentucky, supra,* 510 F.2d at 1359. Subsequently, this Court in *Cunningham v. Grayson,* 541 F.2d 538 (6th Cir. 1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 812, 50 L.Ed.2d 792 (1977), approved the school desegregation plan adopted by the ·district court on July 30, 1975, and implemented beginning in September, 1975, pursuant to this Court's writ of mandamus. *Newburg Area Council v. Gordon,* 521 F.2d 578 (6th Cir. 1975). According to that desegregation plan, first grade students were to be given special treatment. First grade students were exempt from the busing program for the first quarter of the school year, but in the second and third quarters of the school year, they were to be transported by classroom unit with their teachers from their "home" school to their "away" school for a portion of each school day.

In December, 1975, however, before the second quarter of the 1975–76 school year, the district court, upon motion by the appellee School Board, entered an order exempting first graders from the busing plan for the entire 1975–76 school year for the reason that the appellee School Board did not have the necessary number of buses to implement the transportation program for the first grade students. Then, in an order entered April 1, 1976, the district court, upon motion by the appellee School Board, exempted first grade pupils from busing for the entire 1976–77 school year. Appellants appealed to this Court but withdrew that appeal after being requested to do so by the district court, which expressed the intention at that time not to exempt first graders from busing after the 1976–77 school year.

Despite this statement by the district court, in April, 1977, the district court issued the order which is the subject of this appeal. In the district court's opinion supporting the order exempting first graders from busing, the district court found that first grade children who have not had the benefit of previous formal education (i. e. kindergarten) are subject to a high risk of failure because such children are experiencing a transitional period from a sheltered home environment to a structured public environment at a time when they are very young, physically weak, emotionally immature, and easily excitable. The district court also found that if these children were bused, many would have to take long bus trips—36% of the first grade students would have a one way trip of at least 45 minutes. The district court thus concluded "as a matter of law" that the first grade students who have not had the benefit of prior formal educational experience would be subjected to such significant additional risk of failure by their participation in the busing program that an order to bus those children could not be justified.

## II

■ The starting point for judicial consideration of school desegregation cases in *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown I*). In that case, the Supreme Court stated that

in the field of public education the doctrine of "separate but equal" has no place. Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment.

347 U.S. at 495, 74 S.Ct. at 692. The Supreme Court has thus required that state-imposed segregation in the public schools be eliminated. *Milliken I, supra,* 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069; *Keyes v. School District No. 1,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973); *Swann v. Charlotte-Mecklenburg Board of Education,* 402

U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); *Green v. County School Board,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). This principle applies, of course, in favor of first grade pupils as well as older students.

▮ In remedying state-imposed segregation in the public schools, federal courts are guided by equitable principles. *Brown v. Board of Education,* 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) (*Brown II*); *Milliken v. Bradley,* 433 U.S. 267, 279–80, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (*Milliken II*). The Supreme Court has held that in school desegregation cases the "[a]pplication of those 'equitable principles' requires federal courts to focus upon three factors." *Milliken II, supra,* 433 U.S. at 280, 97 S.Ct. at 2757. First, "the nature of the desegregation remedy is to be determined by the nature and scope of the constitutional violation." *Milliken II, supra,* 433 U.S. at 280, 97 S.Ct. at 2757. *See Swann v. Charlotte-Mecklenburg Board of Education, supra,* 402 U.S. at 16, 91 S.Ct. 1267; *Penick, et al. v. Columbus Board of Education,* 583 F.2d 787 (6th Cir. 1978). Second, "[t]he purpose of the remedy is to eliminate the lingering effects of intentional constitutional violations and to restore plaintiffs to substantially the position they would have occupied in the absence of these violations." *Brinkman, et al. v. Gilligan, et al.,* 583 F.2d 243, 257 (6th Cir. 1978). *See Milliken II, supra,* 433 U.S. at 280, 97 S.Ct. 2749. This means that when a dual system has been found, as in this case, there is placed on the School Board an affirmative duty to "take the necessary steps 'to eliminate from the public schools all vestiges of state-imposed segregation.'" *Milliken II, supra,* 433 U.S. at 290, 97 S.Ct. at 2762, *quoting Swann v. Charlotte-Mecklenburg Board of Education, supra,* 402 U.S. at 15, 91 S.Ct. 1267. *See Penick, et al. v. Columbus Board of Education, supra; Brinkman et al. v. Gilligan et al., supra.* And third, once a federal district court's power to remedy segregation in the public schools is invoked, as it has been in the present case, "the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Milli-*

*ken II, supra,* 433 U.S. at 281, 97 S.Ct. at 1276; *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. at 15, 91 S.Ct. 1267.

The present case requires this Court to focus on these three factors to judge the district court's use of its equitable powers to exempt first graders from busing until there be a system-wide kindergarten program or until further order of the district court. Appellee School Board argues that the district court properly exercised its discretion, emphasizing the authority of a federal court to be flexible in ordering a remedy. Appellants, on the other hand, contend that the district court did not have the discretion to exempt the first grade children from the transportation program because the first graders are entitled as much as older students to an education in a public school system not afflicted by state-imposed segregation and that to exempt those students from the busing plan would be contrary to this Court's mandate that all vestiges of state-imposed segregation be eliminated. The desegregation plan would fall short of completely remedying the constitutional violation.

▮ We are in substantial agreement with appellants. Although a federal district court has broad discretionary authority in exercising its equitable powers in formulating a remedy for violations of constitutional rights in a school desegregation case, certainly a district court would be abusing its authority by not ordering any remedy at all. Nor may a district court order a remedy of limited scope which leaves many who have suffered violations of their constitutional rights without redress. To exempt first grade students from busing would leave vestiges of segregation intact contrary to this Court's mandate.

The Courts of Appeals that have been confronted with this issue are in agreement with our conclusion. In *Flax v. Potts,* 464 F.2d 865 (5th Cir. 1972), the Fifth Circuit reversed a district court's adoption of a desegregation plan because it was held not to eliminate all vestiges of state-imposed

segregation. One of the Court's objections to the plan was that first grade students were exempted from the desegregation plan. The Fifth Circuit stated:

> We find no justification for the non-inclusion of first grade students. They are part of the normal curriculum of the district and entitled to a full and equal integrated education.

464 F.2d at 869.

In *Clark v. Board of Education of Little Rock School Dist.,* 465 F.2d 1044 (8th Cir. 1972), the Eighth Circuit held that a desegregation plan which provided that students in grades one through three living in segregated neighborhoods of the eastern and western portions of the city would continue to attend segregated classes in neighborhood schools was contrary to that Court's mandate to eliminate state-imposed segregation "root and branch." *See Green v. County School Board, supra,* 391 U.S. at 437–38, 88 S.Ct. 1689. The Eighth Circuit stated that the exemption of the first three elementary grades "appears to be a last ditch effort to retain a segregated school system . . . ." 465 F.2d at 1047.

This is not to say that in a proper case first graders cannot, at least temporarily, be exempted from a busing program. There are practical limitations to the use of busing as a remedial tool. The district court must give consideration to burdensome effects from busing that "either risk the health of the children or significantly impinge on the educational process." *Swann v. Charlotte-Mecklenburg Board of Education, supra,* 402 U.S. at 30–31, 91 S.Ct. at 1283; *Milliken II, supra,* 433 U.S. at 280 n. 15, 97 S.Ct. 2749.

At first blush it might appear that this is such a case—if the findings of fact by the district court are accepted. The district court has exempted first graders from the transportation program on the ground that many of these children—approximately 60%

according to the district court's findings— will not have had the benefit of kindergarten and without the benefit of that formal educational experience would be subject to a greater additional risk of failure due to the fact that these first graders are for the first time expected to perform in a public environment away from home and would be adversely affected by the physical and emotional strain of lengthy bus trips. In the place of busing, the district court has ordered a continuation of highly beneficial "cross-cultural programs," which give the students a desegregated educational experience,[1] and a "voluntary transfer program," in which students could attend the school to which they would have been bused.[2]

On closer examination, however, we cannot affirm the order of the district court before us. It seeks to avoid what the district court perceived as the emotionally disturbing effects of busing on the first graders who lack the stabilizing benefits of kindergarten. However, the district court has made no findings as to when or if appellee School Board intends to institute a system-wide kindergarten program. Without such findings, the exemption of the first grade pupils stands on a too indefinite basis. Desegregation plans must promise "realistically to work now." *Green v. County School Board, supra,* 391 U.S. at 439, 88 S.Ct. 1689. *See Penick, et al. v. Columbus Board of Education, supra,* 583 F.2d at 792.

The order of the district court is reversed and the cause is remanded with instruction to implement the 1975 desegregation plan as originally approved by this Court, insofar as it pertains to first-graders, until and unless another equally effective desegregation remedy, consistent with this opinion, is devised.

ENGEL, Circuit Judge, dissenting.

I respectfully dissent. While transportation of school children beyond their normal

---

1. Nothing herein should be construed as suggesting, much less mandating, the discontinuation of such a program.

2. We read the district court's opinion as holding that the "cross-cultural" and voluntary

transfer programs satisfy this Court's mandate to remove all vestiges of state-imposed segregation because the busing program for first grade students was impractical.

neighborhood schools may be and often is a necessary tool in a desegregation plan, it is not the only nor the invariable one. Flexibility in such plans is the keystone and like the Supreme Court in *Swann,* I would rely to a large extent on the informed judgment of the district court, 402 U.S. at 28, 91 S.Ct. 1267, 1283, recognizing, as did it that "[i]t hardly needs stating that the limits on time of travel will vary with many factors, but probably with none more than the age of the students." *Id.* at 31, 91 S.Ct. at 1283. While I would in all likelihood have supported an opposite decision by the trial court, I would hold that the order here was within the range of its discretion, especially when accompanied by sensible and objective findings which do not appear to be influenced by any improper motive.