Cynthia CUNNINGHAM and Richard N. Morgan, Plaintiffs-Appellants,

v.

Ernest GRAYSON and Jefferson County Board of Education et al., Defendants-Appellees.

NEWBURG AREA COUNCIL, INC., et al., Plaintiffs-Appellees,

v.

BOARD OF EDUCATION OF JEFFERSON COUNTY, KENTUCKY, Defendant-Appellant,

L. J. Hollenbach, III, County Judge, Intervenor.

John E. HAYCRAFT et al., Plaintiffs-Appellees,

v.

BOARD OF EDUCATION OF JEFFERSON COUNTY, KENTUCKY, Defendant-Appellant.

John E. HAYCRAFT et al., Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF JEFFERSON COUNTY, KENTUCKY, et al., Defendants,

Anchorage Independent School District and Elizabeth Ewing, Superintendent, Intervening Defendants-Appellees.

Nos. 75–2032, 75–2188, 76–1413 and 76–1414.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1976.

Decided Aug., 23, 1976.

Kyle T. Hubbard, Louisville, Ky., for Cynthia Cunningham and Richard Morgan.

James T. Robertson, Louisville, Ky., for intervenors.

John Fulton, Will H. Fulton, Henry A. Triplett, Hogan, Taylor, Denzer & Bennett, E. Preston Young, Louisville, Ky., for Ernest Grayson and Board of Ed. of Jefferson County et al.

John G. O'Mara, Thomas L. Hogan, Louisville, Ky., for Newburg Area Council, Inc. et al.

J. Bruce Miller, Ben J. Talbott, Jr., Middleton, Reutlinger & Baird, Louisville, Ky., for intervenor L. J. Hollenbach, III.

Darryl Owens, Galen Martin, Thomas Hogan and John G. O'Mara, Louisville, Ky., for John E. Haycraft et al.

J. Donald Dinning, James W. Stites, Jr., J. Bissell Roberts, Stites, McElwain & Fowler, Louisville, Ky., for Anchorage Ind. School Dist. et al.

Before PHILLIPS, Chief Judge, and PECK and McCREE, Circuit Judges.

JOHN W. PECK, Circuit Judge.

On December 28, 1973, this court reversed the district court's dismissals of plaintiffs' (No. 75–2188) separate complaints designed to desegregate purportedly dual school systems in Louisville and Jefferson County. We remanded to the district court with directions to eliminate "all vestiges of state-imposed segregation," caveating that "state-created school district lines shall impose no barrier." 489 F.2d 925, 932. After the Supreme Court vacated the opinion of December 28, 1973, in light of *Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974), this court on December 11, 1974, reinstated (with minor modifications) its opinion of December 28, 1973. 510 F.2d 1358. The Supreme Court denied certiorari. 421 U.S. 931, 95 S.Ct. 1658, 44 L.Ed.2d 88 (1975).

The Kentucky State Board of Education on February 28, 1975, ordered the merger of the Jefferson County and Louisville Boards of Education, effective April 1, 1975, but because of the boards' "different views and

positions as to the type and nature of the desegregation plan [the district c]ourt should order, if any," the district court on March 31, 1975, directed the Jefferson County Board of Education (JCBE) and Louisville Board of Education (LBE) to "retain their [pre-April 1, 1975] legal identities" for the desegregation litigation.

JCBE and LBE filed separate desegregation plans with the district court, but on July 30, 1975, the district judge, rejecting the parties' proposals as being constitutionally insufficient, formulated his own desegregation plan. In order to insure black enrollments in the 20 per cent black system in each elementary school of between 12 and 40 per cent and in each secondary school of between 12.5 and 35 per cent, the district judge required pupil transportation from district (neighborhood) schools to assigned schools ("busing"). The plan exempted black and white pupils attending sixteen elementary and twelve secondary schools within the racial guidelines from being bused. The plan also, inter alia, ordered the closing of twelve schools, provided for racial balance in teacher and administrative assignments, and exempted from busing pupils participating in certain programs, such as Headstart, alternative schools, teenage parents, and rehabilitation schools. JCBE has appealed from the desegregation order (No. 75–2188), and from a district court order requiring it to pay $60,-000 to various plaintiffs' attorneys as attorneys' fees (No. 76–1413).

Consolidated with Nos. 75–2188 and 76–1413 in the instant opinion are plaintiffs'

appeal from a district court order dismissing intervening defendant Anchorage Independent School District (AISD) (No. 76–1414), and the appeal of two white pupils, subject to the district court busing plan, from the district court dismissal of their civil rights complaint (No. 75–2032). We affirm in all four appeals.

*The Desegregation Order (No. 75–2188)*

JCBE claims that the district judge erred in imposing the desegregation plan of July 30, 1975, because the plan exceeds the violation, purportedly being limited in pre-merger Jefferson County to three schools; because the district judge imposed "arbitrary racial ratios" rather than using the system-wide racial composition as a "starting point" in formulating the plan; and because the plan inequitably burdens blacks in general, some blacks more than other blacks, and some whites more than other whites by "busing" blacks more than whites, some blacks (nine years) more than other blacks (eight years), and some whites (two years) more than other whites (one year).[1] At oral argument, JCBE contended that the district judge erred in rejecting its desegregation plan, the Jefferson Education Trip (JET), as constitutionally inadequate. However, we find no error in rejecting JET and no abuse of the remedial discretion of the district judge in imposing his desegregation plan.

■ Assuming that the district judge was obligated to accept JET should it be constitutionally sufficient,[2] the judge prop-

---

1. Moreover, as already noted, black and white pupils attending sixteen elementary schools 12 to 40 per cent black and twelve secondary schools 12.5 to 35 per cent black are totally exempt from being bused. Yet such exemptions of pupils attending such already desegregated schools are commonplace in desegregation plans. E. g., *United States v. School Dist. of Omaha*, 521 F.2d 530, 546–547 (8th Cir.), cert. denied, 423 U.S. 946, 96 S.Ct. 361, 46 L.Ed.2d 280 (1975); *Clark v. Board of Educ.*, 465 F.2d 1044 (8th Cir. 1972), cert. denied, 413 U.S. 923, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973); *Tasby v. Estes*, 412 F.Supp. 1192 (N.D.Tex., filed March 10, 1976), earlier opinions, 517 F.2d 92 (5th Cir. 1975), cert. denied, 423 U.S. 939, 96

S.Ct. 299, 46 L.Ed.2d 271 (1975), 342 F.Supp. 945 (N.D.Tex.1971). We have found no case invalidating such exemption. JET, by the way, would involve similar exemption.

Also presumably exempt from being bused are whites in schools more than 35 or 40 per cent black and blacks in schools more than 87.5 or 88 percent white.

2. Because we hold that JET was constitutionally insufficient, we may assume that the district judge would have been obligated to accept it had it been constitutionally sufficient, as the less far-reaching of the two boards' proposals, just as he would be obligated to accept a constitutionally sufficient plan of the only board submitting a plan. See *Morgan v. Kerrigan*,

erly rejected JET, as originally formulated,[3] because it provides only for "part-time desegregation." JET provided that elementary pupils would spend "at least one hour" at their undesegregated neighborhood school; then each class, with its teacher, would board a speaker-equipped bus for continued instruction and transportation to an assigned "away" school, spend three and one-half to four hours at the "away" school for instruction and lunch, and then return by bus to the neighborhood school. Middle and high school pupils would similarly be transported to assigned "away" schools for "four periods of instruction and lunch," but they would be assigned as individuals, rather than by classrooms. JET unfortunately fails to convert schools in a school system, found to be *de jure* segregated, from "a 'white' school [or] a 'Negro' school, [to] just schools." *Green v. County School Bd.,* 391 U.S. 430, 442, 88 S.Ct. 1689, 1696, 20 L.Ed.2d 716, 726 (1968). The Tenth Circuit in *Keyes v. School District No. 1,* 521 F.2d 465, 475–479 (10th Cir. 1975), *cert. denied,* 423 U.S. 946, 96 S.Ct. 806, 46 L.Ed.2d 280 (1976), found a similar court-adopted "half-day" plan to be constitutionally insufficient.

"The claimed advantage of the court's part-time desegregation program over the same program run full-time is continuous neighborhood contact with school facilities. Part-time pairing offers easier access to school inasmuch as each student would attend his neighborhood school for at least a portion of every day. The neighborhood school arguably would remain viable as an afterschool playground

and as the focus for extracurricular and parent activity. Although we acknowledge such neighborhood contact to be important, we cannot place it above the constitutional rights of children to attend desegregated schools. We perceive those rights to include full-time attendance in a desegregated setting." 521 F.2d at 478. See *Morgan v. Kerrigan,* 530 F.2d 401, 410 (1st Cir. 1976); *Brinkman v. Gilligan,* 518 F.2d 853 (6th Cir. 1975); *Tasby v. Estes,* 517 F.2d 92, 104 (5th Cir.), *cert. denied,* 423 U.S. 939, 96 S.Ct. 299, 46 L.Ed.2d 271 (1975); *United States v. Texas Educ. Ass'n,* 467 F.2d 848, 872–873 (5th Cir. 1972); *United States v. Board of Educ.,* 431 F.2d 59, 61 (5th Cir. 1970); *Dowell v. Board of Educ.,* 338 F.Supp. 1256 (W.D.Okla.), *aff'd,* 465 F.2d 1012 (10th Cir.), *cert. denied,* 409 U.S. 1041, 93 S.Ct. 526, 34 L.Ed.2d 490 (1972).

■ Since JCBE failed to propose a constitutionally sufficient desegregation plan, "the scope of a district court's equitable powers to remedy past wrongs [was] broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554, 566 (1971). The plan adopted was "well within [the district judge's] judicial discretion." *Kelley v. Metropolitan County Bd. of Educ.,* 463 F.2d 732, 746 (6th Cir. 1972), *cert. denied,* 409 U.S. 1001, 93 S.Ct. 322, 34 L.Ed.2d 262 (1973).

■ We reject JCBE's claim that the district judge promulgated an "excessive" remedy by formulating a county-wide desegregation plan. JCBE claims that the

---

530 F.2d 401, 409 (1st Cir. 1976); *Davis v. School Dist.,* 443 F.2d 573, 577 (6th Cir.), *cert. denied,* 404 U.S. 913, 92 S.Ct. 233, 30 L.Ed.2d 186 (1971); *Robinson v. Shelby County Bd. of Educ.,* 442 F.2d 255, 258 (6th Cir. 1971); *Mapp v. Board of Educ.,* 329 F.Supp. 1374, 1383 (E.D. Tenn.1971), *aff'd,* 477 F.2d 851 (6th Cir.) (en banc), *cert. denied,* 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973).

**3.** On July 30, 1975, the day the district judge promulgated his desegregation plan, JCBE submitted a "supplement" to JET, originally filed April 30, 1975. The supplement would eliminate most of the "part-time" aspects of the original JET.

"Children who will be transported to any away schools will no longer receive any instruction at their home school but will simply board a JET bus at their home school with their teacher or a monitor and then proceed to the away school for the remainder of the school day." Appendix 192.

We need not decide, however, whether JET, as revised in the supplement, would be constitutionally sufficient, because the supplement was filed simultaneously with the promulgation of the district court plan and, thus, too late for the court to consider in reference to its plan.

finding of *de jure* segregation in Louisville-Jefferson County was limited to three of 103 schools in the former Jefferson County school system, but admits that approximately 85 per cent of the 61 schools in the former Louisville school system were "racially identifiable" in a system which had "formerly practiced segregation by law." In *Keyes, supra,* 521 F.2d 465, the Tenth Circuit sustained a district court's adoption of a system-wide desegregation plan even though the *de jure* segregation was limited to "a single corner of the school district."

"Whether a school system is illegally segregated by reason of statutory separation of the races or by reason of past segregative acts of school authorities, the scope of the remedy must in either case be system-wide. . . .

"[T]he School Board urges us to adopt special remedial standards for cases of non-statutory *de jure* segregation and to limit the remedy to direct results of the Board's segregative acts in Park Hill. We believe the Board's suggestion would saddle the plaintiffs, in the remedy phase of their case, with the burden of proving *de jure* segregation as to each and every school in the system. The [Supreme] Court's opinion in *Keyes v. School Dist. No. 1,* (413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548) plainly forbids us from requiring as much. The district court therefore properly dealt with the entire Denver system in fashioning its remedy." 521 F.2d at 476–477.

Had the district judge imposed "inflexible" racial ratios in the desegregation plan, such imposition would have been an abuse of his discretion. But we agree with plaintiffs and LBE that the district judge permissibly used the system, racial composition as "a starting point in the process of shaping a remedy." *Swann, supra,* 402 U.S. at 25, 91 S.Ct. at 1280, 28 L.Ed.2d at 571; *Brinkman v. Gilligan,* 539 F.2d 1084 (6th Cir., filed July 26, 1976). That the plan will leave no school with a black majority is permissible. See *United States v. School Dist.,* 521 F.2d 530, 547 (8th Cir.), *cert.*

*denied,* 423 U.S. 946, 96 S.Ct. 361, 46 L.Ed.2d 280 (1975) (maximum permissible percentage of blacks in individual school 35 percent in 20 percent black Omaha school system).

Admittedly, the plan requires that, of those black and white pupils to be bused,[4] black pupils be bused much more, eight or nine years, than white pupils, one or two years. But the black plaintiffs have not complained of being unnecessarily burdened in the desegregation process. Cf. *Kelley, supra,* 463 F.2d at 746, 751; *Keyes, supra,* 521 F.2d at 479; *Arvizu v. Waco Independent School Dist.,* 495 F.2d 499, 504–508 (5th Cir. 1974). JCBE's complaining that the plan unnecessarily burdens blacks in general, certain blacks in particular, and certain whites in particular, seems odd in light of its admission in submitting JET that "the frequency of involvement in JET at the middle school level will again vary somewhat between pupils both of a different race and of pupils of the same race." Appendix 132.

■ JCBE however, correctly asserts that the desegregation plan, if contemplating year-to-year realignment to bring the schools back within the racial guidelines, would be improper. If the district judge, by providing that all schools "will have" certain racial percentages and observing that there would be "maintain[ed] a limited range of acceptable racial ratios in individual schools" contemplated year-to-year realignment to correct non-state action-caused divergencies from the racial guidelines, such obiter dictum did not accurately state the law. *Pasadena City Bd. of Educ. v. Spangler,* —— U.S. ——, 96 S.Ct. 2697, 49 L.Ed.2d 599, (June 28, 1976); *Swann, supra,* 402 U.S. at 31–32, 91 S.Ct. at 1283–1284, 28 L.Ed.2d at 575–576; *Brinkman, supra,* 539 F.2d at 1087 (6th Cir., filed July 26, 1976).

### *Attorneys' Fees (No. 76–1413)*

■ JCBE claims that the attorneys' fees award violates the Eleventh Amendment as

---

4. See footnote 1, *supra.*

being, in effect, "an involuntary federal court assessment" against the state treasury.[5] We view the Eleventh Amendment as being no bar because JCBE is an unprotected county agency, rather than the protected "state"; even were JCBE the state, the award of attorneys' fees under 20 U.S.C. § 1617 (Supp.1974), enacted through section five of the Fourteenth Amendment, would be permissible. *Fitzpatrick v. Bitzer,* —— U.S. ——, 96 S.Ct. 2666, 49 L.Ed.2d 614, (June 28, 1976).

Though holding that attorneys' fees cannot be recovered against states, see *Taylor v. Perini,* 503 F.2d 899, 901 (6th Cir. 1974), *vacated on other grounds,* 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1975), *Jordan v. Gilligan,* 500 F.2d 701 (6th Cir. 1974), *cert. denied,* 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975), this court has found no Eleventh Amendment bar to an award against county funds. *Singer v. Mahoning County Bd. of Mental Retardation,* 519 F.2d 748 (6th Cir. 1975); *Incarcerated Men of Allen County Jail v. Fair,* 507 F.2d 281, 287 (6th Cir. 1974). Thus, the Eleventh Amendment is no bar to the attorneys' fee award if we accept plaintiffs' claim that JCBE is neither the "state" nor its "alter ego." *Adams v. Rankin County Bd. of Educ.,* 524 F.2d 928 (5th Cir. 1975); *Singer, supra; Burt v. Board of Trustees,* 521 F.2d 1201, 1205 (4th Cir. 1975); *Hutchison v. Lake Oswego School Dist. No. 7,* 519 F.2d 961 (9th Cir. 1975); *Morris v. Board of Educ.,* 401 F.Supp. 188, 203–205 (D.Del.1975); *King v. Caesar Rodney School Dist.,* 396 F.Supp. 423, 425–427 (D.Del.1975). We agree with plaintiffs. JCBE, "a body politic and corporate with perpetual succession," *inter alia,* may sue and be sued, contract, purchase, receive, hold and sell property, and issue bonds (Ky.Rev.Stat.160.160),

*Lake Oswego, supra, Caesar Rodney, supra,* 396 F.Supp. at 426, cf. *Fitzpatrick, supra,* 519 F.2d 559, 565 (2d Cir. 1975), *aff'd in part, rev'd in part,* —— U.S. ——, 96 S.Ct. 2666, 49 L.Ed.2d 614, (June 28, 1976), establish curriculum and employment standards (Ky.Rev.Stat. 160.290), *Morris, supra,* 401 F.Supp. at 204, *Caesar Rodney, supra,* and, most importantly, levy school taxes through the county fiscal court (Ky.Rev.Stat. 160.-460, 160.470, 160.475, 160.476, 160.593), *Rankin County, supra, Lake Oswego, supra, Morris, supra,* 401 F.Supp. at 204–205, *Caesar Rodney, supra,* cf. *Fitzpatrick, supra.*

### Anchorage Dismissal (No. 76–1414)

Plaintiffs contend that the district court erred in dismissing intervening defendant Anchorage Independent School District (AISD) because AISD, having been "created and maintained solely for members of one race," constitutes an impermissible "vestige of state-imposed segregation." Plaintiffs claim that the district court should order AISD reincorporated into the Jefferson County school system and its desegregation plan. We disagree.

As established by stipulation, AISD was created in 1911 pursuant to state statute providing for the creation of independent "white" school districts (Act of July 6, 1893, as amended by Act of May 26, 1897, Kentucky Statutes, § 4464), and presently has only one black in its school.[6] Because *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), invalidated the racial restriction of the creating statute, the school district would, in conformity with the state severability statute, Ky.Rev. Stat. 446.090, remain in effect for "children," rather than for "white children."

Plaintiffs have stipulated that "[n]o student has ever been excluded from the An-

---

5. In district court, JCBE urged three additional grounds in opposition to plaintiffs attorneys' request for fees. JCBE's appellate brief, however, deals almost exclusively with the Eleventh Amendment claim, rather than claims of insufficient documentation of the fees, unreasonable fees, and "double" governmental payment for the underlying legal services in that at least one plaintiffs' attorney is a commonwealth employee. At oral argument, JCBE counsel admitted that he was relying solely on the Eleventh Amendment claim.

6. The stipulated facts indicate that AISD operates one school providing education for pupils from kindergarten through the ninth grade. In the present enrollment of 305 pupils, there are one black, one Vietnamese and one "Oriental (Asian American)."

chorage School because of race." *Hiett v. Biondi,* 389 F.Supp. 1132, 1134 (N.D.Tex. 1975). Cf. *Tasby v. Estes,* 412 F.Supp. 1192 (N.D.Tex., filed December 11, 1975). Nor is there evidence that AISD committed other racial segregatory practices, such as sending blacks to neighboring school systems or receiving whites from blacker neighboring school systems. See *Milliken v. Bradley,* 418 U.S. 717, 746–747, 94 S.Ct. 3112, 3128, 41 L.Ed.2d 1069 (1974); *Tasby, supra.* Similarly, there is no evidence that the AISD boundaries were drawn in 1911 to include whites and exclude blacks. *Biondi, supra,* 389 F.Supp. at 1133. See *Milliken, supra,* 418 U.S. at 745, 746, 94 S.Ct. at 3127, 3128, 41 L.Ed.2d at 1091; *United States v. State of Missouri,* 515 F.2d 1365, 1369 (8th Cir. 1975); *Haney v. County Bd. of Educ.,* 410 F.2d 920 (8th Cir. 1969); *United States v. State of Texas,* 321 F.Supp. 1043 (E.D.Tex. 1970), aff'd, 447 F.2d 441 (5th Cir. 1971), cert. denied sub nom. *Edgar v. United States,* 404 U.S. 1016, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972). Without evidence of a "constitutional violation within [AISD] that produces a significant segregative effect in another district," *Milliken, supra,* 418 U.S. at 745, 94 S.Ct. at 3127, 41 L.Ed.2d at 1091, there can be no constitutionally required inter-district remedy involving AISD and Jefferson County.

We agree with the district court in "specifically reject[ing] . . . the argument that as a matter of law the very existence of an independent school district created under the predecessor to KRS 160.-020 indicates that that system must of necessity be a 'vestige of state-imposed segregation.' "

### Civil Rights (No. 75–2032)

■ We also affirm the dismissal of two white pupils' complaint for failing to state a claim. Fed.R.Civ.P. 12(b)(6). In their complaint, filed twenty days after the district judge announced his desegregation plan, they challenged the plan as violating the Equal Educational Opportunity Act of 1974 (EEOA), 20 U.S.C. §§ 1701–1758, the Civil Rights Act of 1964, 42 U.S.C. §§ 2000c–1–

2000c–9, especially 2000c–6(a), and the equal protection clause, and secondarily, as being an excessive remedy. We have considered the pupils' claim that the plan was excessive and relied too heavily on "inflexible" racial ratios in connection with JCBE's appeal, No. 75–2188, *supra.*

■ The desegregation plan was specifically designed to eliminate vestiges of state-imposed segregation, *to wit,* "to enforce fully the . . . fourteenth amendment," rather than to racially balance the schools. Thus, the Civil Rights Act is no bar to assigning pupils to schools on racial bases to remove "vestiges of state-imposed segregation." *See, e. g., McDaniel v. Barresi,* 402 U.S. 39, 91 S.Ct. 1287, 28 L.Ed.2d 582 (1971); *Monroe v. Board of Commissioners,* 427 F.2d 1005, 1009 (6th Cir. 1970); *United States v. School Dist. No. 151,* 404 F.2d 1125, 1130 (7th Cir. 1968); *Clark v. Board of Directors,* 328 F.Supp. 1205, 1212 (E.D.Ark.1971); *Harvest v. Board of Public Instruction,* 312 F.Supp. 269, 272–274 (M.D.Fla.1970). Nor does the equal protection clause preclude such "race consciousness." *See, e. g., Barresi, supra; North Carolina State Bd. of Educ. v. Swann,* 402 U.S. 43, 46, 91 S.Ct. 1284, 1286, 28 L.Ed.2d 586, 589 (1971); *Clark, supra.*

Assuming that pupils ordered to be bused may raise EEOA claims, EEOA section 1702(b) specifically exempts desegregation plans designed "to enforce fully the . . . fourteenth amendment." *Newburg Area Council, Inc. v. Gordon,* 521 F.2d 578, 581 (6th Cir. 1975); *Brinkman v. Gilligan,* 518 F.2d 853, 856 (6th Cir. 1975).

Moreover, the district judge explicitly complied with the "priority of remedies" (EEOA Sections 1713, 1755), in determining the necessity of busing. Accord, *United States v. Texas Education Agency,* 532 F.2d 380, 394 n. 18 (5th Cir. 1976); *Kerrigan, supra,* 530 F.2d at 411–415. The district judge, "scrupulously attempt[ing] to follow" the priority of remedies, specifically found

"That section [1713] dealing with the priority of remedies has been considered and followed by this Court to the best of its

ability and the priorities therein delineated have been meticulously followed as well as the other [EEOA] provisions . . . ."

Noteworthily, though otherwise challenging the court-imposed desegregation plan, *supra,* JCBE conceded at oral argument that some busing was necessary "as a last resort," to eliminate state-imposed vestiges of segregation.

Affirmed.

McCREE, Circuit Judge (concurring in part and dissenting in part).

I concur in the majority opinion except with respect to its affirmance of the dismissal of the action against Anchorage Independent School District in No. 76–1414. I do not agree with its approval of the district court's determination that "there is no evidence that the AISD boundaries were drawn in 1911 to include whites and to exclude blacks."

Appellants argue that *as a matter of* (state) *law* a black child residing within the City of Anchorage (i. e., within the geographic boundaries of the district) would *not* have been considered as residing in the Anchorage *white* common graded school district. Instead, they would have been residents of the Jefferson County School District, which maintained both white and colored schools. *Raley v. County Board of Ed.,* 224 Ky. 50, 5 S.W.2d 484, 486 (1928), *Com., etc., Webster County Bd. of Ed. v. Sebree Deposit Bank,* 202 Ky. 589, 260 S.W. 388 (1924). Accordingly, appellants assert that no black children "resided" in the Anchorage School District, and that any black child living in Anchorage who may have applied for admission to its school would have been rejected, not because of his race *per se,* but because he did not (and legally could not) reside within the district.

Nothing in the parties' stipulation is inconsistent with appellants' contention that the Anchorage district "boundaries" were drawn in 1911 to exclude blacks not geographically, but by definition. The district was created *de jure* by state imposed segregation in violation of the Federal Constitu-

tion. If, as appellants contend, the district never lost its segregated character, the district court's dismissal was improper. I cannot agree that the stipulated fact that at present the student body includes one black, one Vietnamese, and one "Oriental (Asian American)" demonstrates as a matter of state law that all vestiges of state imposed discrimination have been removed. Both the Louisville and Jefferson County school districts have within their student populations substantially larger percentages of members of formerly excluded racial groups than does the Anchorage district. Nevertheless, in addition to merely eliminating the racial designations of their schools, both Louisville and Jefferson County are required by law to remove *all* vestiges of unlawful segregation. Anchorage should not be required to do less. Accordingly, I would remand the case to the district court for a determination whether all vestiges of the district's segregated existence have been removed.