ROSA R., on her own behalf and as parent and next friend of her minor child, Edward R., Appellants,

v.

James A. CONNELLY, in his capacity as Superintendent of Schools for the Bridgeport, Connecticut, Public School System, and the Bridgeport Board of Education, Appellees.

No. 190, Docket 89–7382.

United States Court of Appeals,
Second Circuit.

Argued Sept. 28, 1989.

Decided Nov. 9, 1989.

Richard McCarthy, Fairfield, Conn., for appellants.

William H. Narwold, Hartford, Conn. (Karen L. Goldthwaite, Cummings & Lockwood, Hartford, Conn., of counsel), for appellees.

Before OAKES, Chief Judge, and PIERCE, Circuit Judge.*

OAKES, Chief Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut, Ellen Bree Burns, Chief Judge, denying the motion for summary judgment of plaintiffs-appellants, Rosa R. and Edward R., and granting summary judgment to defendants-appellees, James Connelly and the Bridgeport Board of Education ("the Board"). Finding no set of facts to support appellants' allegations that the Bridgeport Board of Education's disciplinary actions denied them due process or equal protection of the law, we affirm the district court's judgment.

### FACTS

Edward R., a former student of the Bridgeport, Connecticut, public school system, was suspended for ten days from high school on March 10, 1987 for bringing a loaded gun to school in order to sell it. During the ten-day suspension, James Connelly, Bridgeport Superintendent of Schools, scheduled an expulsion hearing for March 23, 1987. Upon request by Edward R. and his mother Rosa R., Connelly and the Bridgeport Board of Education twice granted appellants postponement of the hearing. In their second request letter for postponement, appellants waived "any claim which they have against the Bridgeport Board of Education as a result of the delay which they have requested," as well as "any claim for educational services for the duration of the postponement." During the two postponements, Edward R. remained absent from school.

On July 23, 1987, the eventual date of the hearing, the Board voted to expel Edward R. for 180 school days, the maximum period of exclusion from school allowed for disciplinary purposes under Connecticut law. *See* Conn.Gen.Stat. § 10–233a(e) (1989). Despite requests by Edward R.'s attorney, Connelly and the Board denied Edward R. credit for the three months of school he had missed during postponement of the expulsion hearing, thus making the 180–day exclusion effective on the first school day in September 1987, rather than on March 23, 1987, the school day that had followed the ten-day suspension.

* Judge Lumbard recused himself prior to argument.

Bypassing state remedies that allowed for appeal of the Bridgeport Board's actions to the state board of education,[1] Edward R. and Rosa R. filed suit in the District of Connecticut under 42 U.S.C. § 1983 (1982), claiming that the defendants' failure to notify them at the time of the postponement requests that the Board would not credit "time served" by Edward R. violated procedural due process. In addition, plaintiffs claimed that the Board's decision to deny credit for time served was tantamount to magnifying the length of exclusion, thus violating Edward R.'s rights to substantive due process and equal protection. Connelly and the Bridgeport Board challenged the § 1983 claims, and additionally argued that the action was barred under the Eleventh Amendment and that plaintiffs had waived any potential claims in their second request letter for postponement. The district court found that although the Eleventh Amendment did not bar suit, the record failed to support the § 1983 claims, and so entered summary judgment in favor of the defendants.

On appeal, plaintiffs renew their § 1983 claims against the Bridgeport Board and Superintendent Connelly and, in the alternative, seek certification to the Connecticut Supreme Court of state law questions which they argue will be dispositive of the § 1983 claims. Defendants-appellees seek sanctions against appellants' attorney for filing a frivolous appeal.

## DISCUSSION

■ As a preliminary matter, we note that the district court properly dismissed James Connelly, Superintendent of Schools, as a defendant in this case. Because appellants sought to sue him in his official rather than personal capacity, the Board, and not Connelly, was the real party in interest. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). Without any allegations that Connelly was "directly and personally responsible for the purported unlawful con-

duct," appellants failed to assert a distinct claim against him, rendering their complaint as to Connelly "fatally defective" on its face. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.1987). We thus proceed to consider appellants' claims against the Bridgeport Board only.

### 1. *Eleventh Amendment*

■ To determine whether a local board of education is an arm of the state and thus entitled to Eleventh Amendment protection from suit in federal court, this court must examine the degree to which the entity is supervised by the state and the entity's source of funds for satisfying judgments rendered against it. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977). Such an inquiry into Connecticut's education system supports the conclusion that local school boards are municipal bodies for purposes of the Eleventh Amendment and thus subject to suit in federal court.

Under Connecticut law, local school boards are endowed with broad authority and discretion. Although the state board of education is charged with "general supervision and control of the educational interests of the state," Conn.Gen.Stat. § 10–4(a) (1989), "being a steward of state education policy does not make the school district an alter ego of the state." *Fay v. South Colonie Cent. School Dist.*, 802 F.2d 21, 27 (2d Cir.1986). This is true particularly in Connecticut, where actual implementation of the goals and maintenance of the public schools are the responsibilities of local boards, *see* Conn.Gen.Stat. § 10–220 (1989), whose members are chosen by municipal election. *See id.* § 9–203.

Of greater significance than the scope of authority enjoyed by local school boards, however, is their source of funding. *See Holley v. Lavine*, 605 F.2d 638, 643–44 (2d Cir.1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). Although local boards receive much of their

1. The state board of education had offered to hear plaintiffs' challenges to the Bridgeport Board's actions prior to March 1988 in an expe-

dited appeal proceeding pursuant to Conn.Gen. Stat. § 10–186(b) (1989).

financing from the state, "[i]nferior government bodies do not share in Eleventh Amendment immunity simply because they receive state funds." *Fay*, 802 F.2d at 27. Because in Connecticut "funding education ... remains primarily the function of the towns," *Lostumbo v. Board of Educ.*, 36 Conn.Supp. 293, 295–96, 418 A.2d 949, 951 (1980); *see also Horton v. Meskill*, 195 Conn. 24, 40 n. 17, 486 A.2d 1099, 1108 n. 17 (1985) (stating that, by 1984, local communities still financed 49.8% of state educational costs, whereas the state's share of funding amounted to 42.9%), any judgments rendered against the Bridgeport Board of Education would come primarily from local funds.[2] We therefore hold that the local board is not entitled to Eleventh Amendment protection from suit in federal court.[3]

### 2. *Appellants' Constitutional Claims*

#### A. Procedural Due Process

Appellants contend that they were entitled, at the time they requested postponements of the expulsion hearing, to notice of the possibility that such requests would result in Edward R. being excluded from school past March 1988. They further argue that the Board's failure to provide such notice rendered Edward R.'s expulsion beyond March 1988 an unconstitutional deprivation of property without due process of law.

For appellants to establish a procedural due process violation, they must: (1) identify a property right, (2) establish that governmental action with respect to that property right amounted to a deprivation, and (3) demonstrate that the deprivation oc-

curred without due process. *See Fusco v. Connecticut*, 815 F.2d 201, 205 (2d Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987). The district court, while concluding that Edward R. did have a property right to education after March 1988, in essence found proof of the second and third elements to be lacking.

Although the district court and the parties focus on whether Edward R.'s absence from school beyond March 1988 was the result of his own or governmental action, this inquiry misses the mark. It is true that Edward R.'s postponement requests resulted in his prolonged absence from school; by the same token, however, the Board's decision not to credit the three-month postponement period contributed to Edward R.'s absence beyond 180 days. Thus even if appellants were largely responsible for Edward R.'s prolonged exclusion, the Board's decision to deny credit for time served may very well have constituted sufficient action to amount to governmental deprivation of a property right.

Nevertheless, the district court properly held that the deprivation was not visited upon plaintiffs without due process of law. In arguing that notice of the possible denial of credit for time served should have been provided when they requested postponements of the hearing, appellants misstate the essence of procedural due process. Due process requires that individuals have "notice and opportunity for hearing appropriate to the nature of the case" prior to a deprivation of life, liberty, or property. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652,

---

**2.** As Chief Judge Burns noted below, defendants failed to establish a record regarding the percentage of funds more currently derived by local school boards from the state.

**3.** This result is consistent with those reached by other courts on the same issue. *See generally Mt. Healthy*, 429 U.S. at 279–80, 97 S.Ct. at 572–73 (holding that local school board is not an arm of the state under Ohio law); *Minton v. St. Bernard Parish School Bd.*, 803 F.2d 129, 131–32 (5th Cir.1986) (denying local school board Eleventh Amendment immunity under Louisiana law); *Unified School Dist. No. 480 v. Epperson*, 583 F.2d 1118, 1121–23 (10th Cir.

1978) (holding that Kansas school district is local, and not state, entity). Although the Tenth Circuit has held that New Mexico's boards of education are arms of the state, *see Martinez v. Board of Educ.*, 748 F.2d 1393, 1394–96 (10th Cir.1984), New Mexico's system can be distinguished since the state maintains total control of the educational budget and provides 96% of local school board funds. Moreover, the holding in *Martinez* has not gone unquestioned. *See Garcia v. Board of Educ.*, 777 F.2d 1403, 1411–17 (10th Cir.1985) (McKay, J., dissenting in part), *cert. denied*, 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986).

656–57, 94 L.Ed. 865 (1950). The notice requirement of due process does not require that school administrators provide a detailed listing of all possible courses of action for which discipline might be imposed or of all possible penalties. *See Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 686, 106 S.Ct. 3159, 3166, 92 L.Ed.2d 549 (1986). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657.

In this case, appellants received notice that the Board may impose the 180–day expulsion on top of the three-month postponement period as early as July 1, 1987. Not only were they given ample opportunity to present their views at the July 23 hearing on whether Edward R.'s three-month absence should be credited toward the 180 days, but also, appellants had recourse to appeal the Board's decision to the state board of education before the allegedly unconstitutional deprivation took effect. That appellants and their attorney chose not to avail themselves of these state remedies does not mean they were denied adequate due process. *See Campo v. New York City Employees' Retirement Sys.,* 843 F.2d 96, 102 & n. 6 (2d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988). Where, as here, the challenged deprivation of property took place in March 1988, notice in July 1987 afforded appellants ample opportunity to present their objections and even to seek reversal of the Board's decision.[4]

**B. Substantive Due Process**

■ The district court's dismissal of appellants' substantive due process claim was also proper. Even if appellants can establish that governmental action deprived Ed-

ward R. of his property right to education after March 1988, appellants have failed to establish that such a deprivation was arbitrary. Rather, appellees have offered numerous reasons as to why they denied Edward R. credit for his absence from school during the postponements, including their desire to maintain discipline in the schools and to prevent the disruption attendant upon reentering school late in the year. As the district court noted, "[t]hat the defendant's construction of state law governing expulsions may be erroneous, or that its professed desire to take a strong stand against handguns may seem to plaintiffs to be overzealous, ... or that plaintiffs [find debatable] ... the concern that if Edward were allowed to return to school three-quarters of the way through a school year he arguably would fail ... is not the issue." *Rosa R. v. Connelly,* Civ. No. B–88–190 (EBB), at 23 (D.Conn.Mar. 17, 1989). Rather, "[r]eview and revision of a school suspension on substantive due process grounds would only be available in a rare case where there was no 'rational relationship between the punishment and the offense.'" *Brewer v. Austin Indep. School Dist.,* 779 F.2d 260, 264 (5th Cir.1985) (citation omitted); *see also Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975) ("It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion."). Where, as here, appellees have offered reasons for their decision to deny credit for time served, appellants have failed to establish that the decision was arbitrary or irrational or motivated by bad faith.

**C. Equal Protection**

■ Appellants' equal protection claim similarly lacks merit and thus was properly

---

4. Appellants seek to supplement the record by including admissions made by the Bridgeport Board in a related case, *Laverne B. v. Connelly,* Civ. No. B–87–660 (EBB) (D.Conn.), in which Superintendent Connelly conceded that the Board had a practice of disallowing students for whom expulsion was being requested from returning to school prior to a formal hearing. Appellants argue that including this in the record would support their due process claims by establishing that the Board's actions, and not appellants', were responsible for the *de facto* exclusion of Edward R. beyond 180 school days. Yet even if appellants established governmental action amounting to a deprivation, they cannot prevail on the merits of their claims. Accordingly, we find no need to address appellants' motion to supplement the record.

dismissed. Incredibly, appellants argue that the Board has established a classification of students, violative of the equal protection clause, that treats students who request postponements differently from those who do not. Even if such a classification has in fact been established, equal protection of the law "does not reject the government's ability to classify or 'draw lines'.... Rather, it guarantees that those classifications will not be based on impermissible criteria. If the government classification relates to a proper governmental purpose, then the classification will be upheld." *Al-Charles, Inc. v. Heintz,* 620 F.Supp. 327, 335 (D.Conn.1985); *see also* J. Ely, *Democracy and Distrust* 30–31 (1980). Because appellants have not established that the purported classification was based on suspect criteria or that the Board's treatment of Edward R. was irrational or motivated by ill will, their equal protection claim must fall.

### D.  Section 1983

Appellants challenge the district court's dismissal of their "fourth cause of action," alleging that they are entitled to redress under § 1983. It is fundamental, however, that § 1983 creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such rights. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). The district court thus properly concluded that plaintiffs' "fourth cause of action" did not constitute an independent claim or ground for relief.[5]

### 3.  *Certification to the Connecticut Supreme Court*

█ In the alternative to prevailing on the merits of their constitutional law claims, appellants seek certification to the Connecticut Supreme Court of the question of the legality under Connecticut law of an expulsion for 180 school days following an exclusion or *de facto* expulsion of three months. Appellants' attempt to seek resolution of state law claims at this stage in the lawsuit is entirely unacceptable. Having forgone their state court remedies, appellants should not now be able to return to the state court because of an unfavorable resolution of their federal claims. Furthermore, contrary to appellants' assertions, resolution of the state law question is not "controlling" as to the federal claims. Even if the Board is found to have violated state law, its actions do not necessarily constitute violations of federal law, because "even an outright violation of state law ... will not necessarily provide the basis for a federal claim." *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985). Appellants' motion for certification is therefore denied.

### 4.  *Sanctions Against Appellants' Attorney*

Arguing that appellants' claims on appeal lack any merit, appellees seek attorneys' fees, costs and expenses pursuant to 28 U.S.C. § 1927 (1982) and Rule 38 of the Federal Rules of Appellate Procedure. Although this is a close question, we find insufficient cause to award sanctions in this case. Accordingly, we deny appellees' motion.

The judgment of the district court is AFFIRMED, and appellees' motion for costs and attorneys' fees is DENIED.

---

**5.** Because appellants' allegations may be dismissed on substantive grounds, we decline to address appellees' defense that the action is barred by appellants' second letter requesting postponement of the hearing, in which they "waive[d] any claim which they have against the Bridgeport Board of Education as a result of the delay which they have requested."