**Joyce Reynolds BLACKBURN, Plaintiff,**

v.

**FLOYD COUNTY BOARD OF EDUCATION By and Through its members, James D. ADAMS, Arville Duff, Mary Hall, Tommy Boyd and Ray Campbell and Ronald Hager, Individually and in His Official Capacity as Superintendent of Floyd County Schools, Defendants.**

Civ. A. No. 89–203.

United States District Court,
E.D. Kentucky.

Aug. 17, 1990.

Ned B. Pillersdorf, Prestonsburg, Ky., Phillip J. Shepherd, Frankfort, Ky., for plaintiff.

Bryan, Fogle & Chenoweth, Mt. Sterling, Ky., Francis, Kasee & Francis, Prestonsburg, Ky., John G. Prather, Somerset, Ky., for defendants.

HOOD, District Judge.

This matter is before the court on the defendants' motion for summary judgment against the civil rights complaint of the plaintiff, Joyce Reynolds Blackburn [Blackburn]. They have objected to the Report and Recommendation of the United States Magistrate recommending that the motion be denied. [Record No. 33]. The parties have also filed supplemental briefs addressing recent case law developments and their potential effect on this case. The court has reviewed *de novo* the record as developed.

Blackburn brought this action under 42 U.S.C. § 1983 alleging that her First Amendment right of free expression was violated by the defendants' refusal to rehire her as a teacher in the Floyd County, Kentucky school system. The defendants are the Floyd County Board of Education, through its board members [Board], and Floyd County Schools Superintendent Ronald Hager [Hager]. The defendants' motion for summary judgment presents two primary arguments which are also reflected in a number of similar § 1983 actions against Kentucky school boards and superintendents: (1) is a local board of education in Kentucky a state agency or "arm of the state" entitled to immunity from suit under the Eleventh Amendment to the United States Constitution; and (2) does the complaint allege acts by Hager outside of his "official" capacity to sufficiently support an "individual" capacity claim for relief. The defendants object to the Magistrate's conclusion against them on both of these grounds.[1]

---

1. The defendants had originally argued also for summary judgment on the basis that Blackburn failed to allege a First Amendment violation.

The recent United States Supreme Court ruling in *Rutan v. Republican Party of Illinois,* —— U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990),

■ The court will first consider the Board's Eleventh Amendment argument. The Magistrate concluded that, although there is oversight by the state, a local school board in Kentucky retains substantial control over the operation of its district. Thus, local school boards in Kentucky are not merely state agencies. In reaching this result, the Magistrate adopted the same analysis and conclusion reached in *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977), and *Cunningham v. Grayson,* 541 F.2d 538, 543 (6th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 812, 50 L.Ed.2d 792 (1977). *Cunningham* specifically involved Kentucky schools.

The Board continues to argue that "tumultuous" developments in Kentucky law since *Cunningham* now force an opposition conclusion. They particularly point to the recent Kentucky Supreme Court ruling that the Commonwealth's system of schools violates the Kentucky Constitution. *Rose v. The Council for Better Education, Inc.,* 790 S.W.2d 186 (Ky.1989) [Record No. 9, Exhibit]. There, the court held that the legislature was required not only to establish the school system, but to continually monitor and supervise it. *Id.* at 211.

The Board also relies on *Clevinger v. Board of Education of Pike County, Kentucky,* 789 S.W.2d 5, 10–11 (Ky.1990), in which the Kentucky Supreme Court reaffirmed that local school boards in Kentucky are entitled to state law sovereign immunity and, in so doing, stated that "[t]here has never been any question about the status of a local school board as an agency of state government...." The court appeared to interpret the United States Supreme Court decision in *Will v. Michigan Dep't of State Police,* 491 U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), as holding that local government units protected by state sovereign immunity are not "persons" under § 1983.

The court must first point out that the United States Supreme Court has recently rejected the Kentucky court's view of *Will. Howlett v. Rose,* —— U.S. ——, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). The Court held that state law sovereign immunity does not, alone, operate to preclude a federal civil rights complaint from being heard. "A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise...." *Id.* at ——, 110 S.Ct. at 2443 (quoting *Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980). The Court confirmed that the issue is one to be determined by federal law. The Court in *Howlett* did not reach the issue of whether a Florida local school district was an arm of the state. —— U.S. at —— n. 24, 110 S.Ct. at 2445 n. 24.

■ *Will* does stand for the proposition that entities which are agencies or arms of the state, thus protected by Eleventh Amendment immunity, cannot be "persons" within the scope of liability under § 1983. The Kentucky Supreme Court in *Clevinger* believed this principle to be applicable to Kentucky schools, although it did not discuss the factors which must be utilized under federal law. Under *Howlett,* the Kentucky court's opinion on this matter is not controlling.

The Sixth Circuit has utilized a method of analysis adopted from the Third Circuit for determining whether a governmental entity, particularly an educational institution, is an "arm of the state" for Eleventh Amendment immunity purposes:

> [L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plain-

overruled *Messer v. Curci,* 881 F.2d 219 (6th Cir.1989), and *Rice v. Ohio Dept. of Transportation,* 887 F.2d 716 (6th Cir.1989), on which the defendants had relied. As a result, they now

admit the alleged refusal to reemploy the plaintiff states a cause of action for First Amendment violations. [Record No. 46].

tiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.

*Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 302 (6th Cir.1984) (quoting *Blake v. Kline,* 612 F.2d 718, 722 (3rd Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980)). The *Hall* court noted, albeit in *dictum,* that "[m]unicipalities, counties and other political subdivisions (*e.g. public school districts*) do not partake of the state's Eleventh Amendment immunity." 742 F.2d at 301 (emphasis added).

Some of the *Hall* factors were referenced in the *Cunningham* court's finding that the Jefferson County, Kentucky Board of Education [JCBE] was not the "state" or its alter ego. "JCBE, 'a body politic and corporate with perpetual succession,' *inter alia* may sue and be sued, contract, purchase, receive, hold and sell property, and issue bonds, establish curriculum and employment standards, and, most importantly, levy school taxes through the county fiscal court." *Cunningham,* 541 F.2d at 543. Kentucky schools continue to retain these powers. Nonetheless, the Board argues that the broader factors reflected in *Hall,* combined with recent Kentucky school law developments, yield a different conclusion.

In its argument, the Board relies primarily on two factors from the *Hall* analysis—the degree of local autonomy and the extent to which the local board is independently financed. These elements were focused upon in the only two cases cited by the defendants as holding local school boards to be protected by Eleventh Amendment immunity. *Martinez v. Board of Ed-ucation of Taos Mun. School Dist.,* 748 F.2d 1393 (10th Cir.1984) (New Mexico schools); *Martinez v. Board of Education of Emery County School Dist.,* 724 F.Supp. 857 (D.Utah 1989) (Utah schools). The Board attempts to parallel these systems to the Kentucky scheme of public schools. Although there are some comparable points, this court is convinced that local school boards in Kentucky are vested with sufficient autonomy to preclude Eleventh Amendment immunity.

New Mexico's constitution itself creates a state department and board of education, expressly vesting the state board with control, management, and direction of all public schools. *Taos Mun. School Dist.,* 748 F.2d at 1394. The Kentucky Constitution provides only that "[t]he General Assembly shall ... provide for an efficient system of common schools...." Ky. Const. § 183. Although this section was interpreted in *Rose* to require state supervision of school management, this is not inconsistent with actual decision-making on a local level.

The Kentucky legislature mandates that "[e]ach school district shall be under the *management and control* of a board of education." KRS 160.160 (emphasis added). As earlier stated, the *Cunningham* court relies on the powers enumerated in this statute. Such powers have been relied upon elsewhere to find local boards to be autonomous bodies. *Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 132–33 (5th Cir.1986). In *Minton,* the court found that Louisiana's local school boards "exercise a great deal of discretion in performing their functions and addressing their innately local concerns...." *Id.*

The Kentucky legislature has, likewise, set up local school boards to address "innately local concerns". At KRS 160.290, local boards, again, are given "general control and management" of the public schools within each district. The statute goes on to list powers such as establishing schools, providing courses and services, controlling and managing funds, appointment of officers, agents, and employees. The defendants offer a list of statutes providing for

state supervision over the exercise of authority by school boards and minimum standards in certain areas. *See, e.g.,* KRS 160.030, 160.460, 160.530, 162.010; 162.060; 702 KAR 4:050, 4:090, 3:020. However, the underlying theme in all of these statutes and regulations is that the actual decision is made by the local school board, not the state.

There is no evidence that the local decisions operate in effect as mere recommendations. It is the local boards which hold the substantial decision-making authority in regard to the local concerns for which they are established. Although the state does establish guiding rules and policies for the "efficient" administration of the public schools, "being a steward of state education policy does not make the school district an alter ego of the state". *Fay v. South Colonie Central School Dist.,* 802 F.2d 21, 27 (2nd Cir.1986) (refusing Eleventh Amendment immunity for New York school boards); *Rosa R. v. Connelly,* 889 F.2d 435, 437 (2nd Cir.1989) (quoting *Fay* and finding Connecticut school boards are not state agencies).

The Board refers to the fact that a substantial portion of Floyd County's school budget is funded by the state, inferring that a judgment against them in this case would be satisfied by state funds. There is no evidence in the record to overall funding levels for Kentucky schools. It would be inappropriate to reach such a conclusion for all Kentucky school boards on the basis of the Floyd County Board's local fundraising decisions.

The *Hall* analysis cites whether the judgment will *have* to be paid out of the state treasury as "perhaps the most important" factor. 742 F.2d at 302. However, a corresponding element is whether the Board has the "funds or power to satisfy the judgment". Although the defendants allude to the possibility that state funds may be used to pay any judgment in this case, it is clear that the Board has and exercises the power to levy taxes. Thus, it has funds and a

source of funds to satisfy any judgment locally. There is no evidence that the Floyd County Board could not satisfy the judgment from local funds. The denomination of such monies as "state funds" by Kentucky courts is of no effect here. The money is retained and spent locally.

■ The Eleventh Amendment does not apply simply because the local board receives a substantial part of its financing from state funds. *Rosa R.,* 889 F.2d at 437–38 (citing *Fay,* 802 F.2d at 27). This principle would apply even if the state fully reimbursed the local board for judgments. *Gary A. v. New Trier High School Dist. No. 203,* 796 F.2d 940, 945 (7th Cir.1986) (holding Illinois school boards not to be cloaked with Eleventh Amendment immunity). The *Gary A.* court found that, where local school boards have powers to issue bonds and levy taxes, "[i]t is irrelevant that a state provides some funds that may be used to pay judgments." 796 F.2d at 945.

The foregoing analysis under *Hall* and similar cases from other jurisdictions compels this court to agree with the plaintiff. Kentucky local boards of education are not arms of the state and, thus, they are not entitled Eleventh Amendment immunity. This result necessarily precludes the Board's argument, under *Will,* that it is not a "person" under § 1983.

■ The next question presented is whether the complaint alleges acts which support the plaintiff's claims against Hager in his individual capacity. Hager urges that the plaintiff has not shown how his act of refusing to recommend Blackburn for rehiring was somehow "unofficial". *Cowan v. University of Louisville School of Medicine,* 900 F.2d 936, 942 (6th Cir.1990) (quoting *Rice* ).[2] Unlike the evidence in *Cowan* and *Rice,* the plaintiff's evidence here raises at least circumstantial and inferential evidence of retaliation by Hager sufficient to overcome summary judgment. *Crutcher v. Kentucky,* 883 F.2d 502, 504 (6th Cir.1989).

---

**2.** Although *Rice* was overruled by the United States Supreme Court in *Rutan,* the court did not touch upon this point.

Blackburn, after four years of teaching, was not rehired. This action directly followed her vocal criticism of school management, including Hager. This criticism was voiced in a television interview and in a letter to Hager. Blackburn was an organizer and highly visible participant in a community organization protesting alleged conditions in the Floyd County school system, including retaliatory hiring practices. Retaliation by Hager against Blackburn for these actions would clearly be "individual" acts beyond the scope of his official position.

Hager maintains that these actions by the plaintiff were not within a "clearly established constitutional right". *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). He does not believe Blackburn actually spoke out on matters of "public concern" within First Amendment protection. The record, as noted in the Report and Recommendation, refutes this contention.

█ Blackburn criticized the management of the school system. Although she also noted salary concerns, that conduct was only part of the overall scheme of her actions, particularly through the advocacy group. Such commentary is clearly within the scope of First Amendment protection. Although he has not had the opportunity to raise such this point, it is certain that the defendant would argue the "novelty" of the *Rutan* decision. Regardless of the outcome in *Rutan* relating to patronage, it has long been held that persons cannot be retaliated against in their employment for the exercise of constitutional rights. *See, e.g., Mount Healthy*, 429 U.S. at 283–84, 97 S.Ct. at 574–75; *Rankin v. McPherson*, 483 U.S. 378, 383–84, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987). The individual capacity claims against Hager in this action must go forward. Accordingly, the court being advised.

IT IS ORDERED HEREIN AS FOLLOWS:

(1) That the defendants' objections to the Magistrate's Report and Recommendation be, and the same hereby are, OVERRULED.

(2) That the Magistrate's Report and Recommendation, as supplemented by the Memorandum Opinion herein, be, and the same hereby is, ADOPTED by and for the opinion of this court.

(3) That the defendants' motion for summary judgment be, and the same hereby is, DENIED.